## Warram v. Civil Service Commission

*Michael Kean,* for appellant.

*John Merrick,* contra.

PITT, *J.,* July 30, 1974—On Sunday, May 21, 1972 Joseph L. Warram, an officer with the Kennett Square Police Department, was completing a plain clothes assignment and was returning to the police station to go off duty. As will be discussed in more detail hereafter, a tragic incident occurred in which a young girl was shot by Officer Warram. Warram was suspended by the mayor of the borough and subsequently removed from the police force by borough council. On appeal to the Civil Service Commission, that removal was affirmed. An appeal was then taken to this court and argument on the matter was held. Because the Civil Service Commission did not make findings of fact to support their legal conclusions, this court remanded

the matter to the Civil Service Commission in order that such findings be made. The commission complied with the court order and returned findings of fact. Appellant, through his attorney, then moved to strike the findings of fact because the members of the commission which submitted the findings of fact were not the same commission members who originally upheld the dismissal of appellant. The applicable statute does not require the Civil Service Commission to make findings of fact.

At the argument presented, it was agreed that the findings of fact were submitted by a Civil Service Commission whose members are not the same as the commission who heard the case in 1972. Their review of the record is, at best, an independent one and such we believe can best be made by this court. We, therefore, sustain appellant's objection to the findings of fact and proceed on the facts as we find them.

The issue presented to the court is whether the firing of the pistol by Officer Warram, in light of the circumstances presented, was conduct unbecoming an officer which would justify removal from the police force. To make a proper determination of the matter, we must observe the facts as they appeared on the night of May 21, 1972. We must eliminate from our consideration the temptation to view the incident through hindsight which always appears as 20-20 vision and the reasonableness of the officer's actions cannot be governed by the gravity of the result alone.

On the night of May 21, 1972, Officer Warram was returning to the police station from duty on an undercover assignment. Necessarily, he was out of uniform. As he traveled he noticed a car following him which drove with its lights on high beam. The car followed Officer Warram for some distance. Of-

ficer Warram stopped his car and went to the vehicle behind him which was being driven by one Manual Cruz Rivera. The police officer identified himself and told the driver that he was driving with his bright headlights. Mr. Cruz was apparently Spanish speaking and there was a severe communications barrier. Ironically, the young girl who was injured was the only individual in the automobile who spoke English. There were three other children in the car along with Mr. Cruz and his wife. Failing to convey his thoughts to the driver, Officer Warram opened the door of the automobile for the purpose of calling the driver's attention to the light switch. Mr. Cruz shut the door and bent down towards the floor. On believing Mr. Cruz to be reaching for a weapon, Officer Warram pulled his pistol and the gun discharged through the open window of the vehicle and struck the Cruz child in the jaw.

In light of these facts, we must determine whether appellant was guilty of conduct unbecoming an officer as limited by the formal charges against him. In the first specification of the charge against appellant it was alleged that he failed to take proper precautions according to reasonable police practice in his handling of the detention of the Cruz vehicle and its occupants. This record is devoid of any evidence as to what were proper precautions according to reasonable police practice and appellant's testimony that he had no firearms training through the Kennett Square Police Department went unrebutted. The question to be answered is whether it is conduct unbecoming an officer for a police officer who is standing beside an automobile, at night, pursuing a routine matter and who observes the driver suddenly bend towards the

floor, to consider the situation dangerous and to draw his revolver.

The Borough Code provides for the suspension of a policeman for conduct unbecoming an officer: Act of February 1, 1966, P.L. (1965) 1656 (No. 581), sec. 1190, 53 PS §46190. Such conduct has been defined generally as that which would adversely affect the morale and efficiency of the bureau to which the man was assigned. It is conduct which has a tendency to destroy the public respect for the municipality employes and confidence in the operation of municipal services: Zeber Appeal, 398 Pa. 35, 156 A.2d 821 (1959). Although we have been unable to uncover any authority which has dealt directly with the question of an officer discharging a weapon, we have been aided by a case decided in New York: People v. Waldo, 144 N.Y. Supp. 250, 59 app. Div. 303 (1913). In the Waldo case, an officer killed his wife when the revolver he was cleaning accidentally discharged. In holding that such was not conduct unbecoming an officer, the court noted that there could be no finding of willful or wanton carelessness and stated:

"Doubtless there was some carelessness or inadvertence on his [the officer's] part, or the revolver could not have been discharged; but whatever the inadvertence, under these circumstances, it could not have amounted to the offense of 'conduct unbecoming an officer'."

From the authorities cited which have ruled on this offense, it is our belief that the standard to be applied is a type of intentional conduct and not an isolated accidental happening. The facts as they are presented fail to show an intentional act on the part of Officer Warram. The Cruz family testified that the officer's techniques were offensive and

that he did intend to shoot someone in the automobile. We did not find that testimony credible and that testimony when considered as a whole in this record is completely incredible. We were greatly impressed by the testimony of the impartial observer, one Mrs. Calvarese. From her vantage point, she observed Officer Warram walk to the car, identify himself and attempt to communicate to the driver of the car the problem with regard to his headlights. She testified that the officer opened the car door and that the driver pulled the door shut. She then clearly observed the driver bend over. At this point, the police officer drew his pistol and the gun fired. She said that the officer did not point or aim the gun in any way.

From the testimony offered by Officer Warram and as corroborated by such an impartial witness, we cannot find that the police officer intended to fire his weapon. Although his intent to draw the pistol is evident, such an act was reasonable in light of these circumstances. Officer Warram was confronted with an individual with whom communication was a problem and who suddenly reached for the floor of the car. He could not know what would result from such an act by the driver. The act of drawing his revolver was reasonable, although it may have been imprudent. We cannot expect our police officers who are confronted with such a situation, at night, to react as one would upon cool reflection.

On hindsight, one might easily conclude that Officer Warram should not have pulled his pistol. Nevertheless, the record does not support the finding of an intentional act or such willful or wanton carelessness as would support a charge of conduct unbecoming an officer. The incident was an iso-

lated accidental happening, though indeed, the consequences were grave.

The function of the trial court on appeal from a decision of the Civil Service Commission is to make sure that just cause for dismissal exists, both factually and legally, and that the municipal officers have not abused their discretion in imposing the punishment in question: Gabauer v. Civil Service Commission, 6 Pa. Commonwealth Ct. 646, 297 A.2d 507 (1972).

Having reviewed the entire record, we conclude that the Civil Service Commission has abused its discretion. Although Officer Warram may, indeed, have acted imprudently, his actions in light of the situation as he viewed it on the evening of May 21, 1972, are not such as would sustain the offense "conduct unbecoming an officer." Furthermore, such an accidental event does not appear to be a sufficient ground for dismissal.

And so we make the following:

ORDER

And now, July 30, 1974, the Civil Service Commission of Kennett Square abused its discretion in finding that Officer Joseph L. Warram was guilty of the offense of conduct unbecoming an officer. Officer Warram is ordered reinstated to his position in the police force of the Borough of Kennett Square with direction to the Borough of Kennett Square to reimburse him for all pay and allowances owing to him since the date of his removal by Borough Council on July 5, 1972, and less any sums that he has earned by virtue of other employment during that period.